Good afternoon. John Ballas on behalf of the defendant, John Hayes, intending to reserve two minutes of my time for rebuttal. There's three issues raised in my brief. Two of them are Fourth Amendment issues. Counsel, I had a problem with them, a couple of things, and let me focus you on my problems. The first one is the delay while taking the evidence most favorably to Hayes. All the police are standing around doing nothing, waiting for the drug dog to arrive. It was two to three minutes. Hayes had driven 85 miles an hour. He'd gone from the far left lane to the far right lane to make an exit in order to evade the police, and then he'd run a red light. You do those things, you can expect to be stopped for speeding, improper lane change, and running a red light. And he was. Pretextual, but that's okay under Wren. At two to three minutes, the question, the constitutional question, is whether the stop was unduly prolonged. And gosh, I can't imagine getting a traffic ticket in less than two or three minutes. Ordinarily, you get a speeding ticket even without all the excitement of Hayes' driving, and it takes anywhere from five or ten minutes to 20 minutes. I think the constitutionally important principle is not the length of the delay, but whether the delay, whether the stop was extended beyond the purpose of the stop. I don't know if that's right under Mueller v. Mina, among others. Mueller v. Mina, as I recall, says that the question is, and for that matter our decision in Chavez-Valenzuela, whether the stop was, quote, prolonged beyond the time, close quote, needed for the reason for the stop. Prolonged beyond suggests to me that it does have to do with duration. And what's more, it has to be after the end of the time that was needed for the reason for the stop. I guess my point is that there's not any specific amount of time or duration that's important. The duration has to be tailored to the purpose of the stop. In this case the ---- Why? What authority is there for that? I think the case you just said, the language you just quoted referred to the duration needed for the stop. In this case ---- Which case? I just quoted from two of them. Mueller v. Mina. The Supreme Court case. That's where we had said, no, they couldn't hold her in handcuffs for two or three hours when she was totally uninvolved and they were doing a search. And the Supreme Court said, yes, they can.  That was a ---- I mean, that's a different context. That was a search of a house that understandably is going to take a long time. In this case, they pulled him over for a traffic violation, ostensibly. They had already done a briefing beforehand and knew that he had a criminal history record. The officers testified at the evidentiary hearing they did not need to do a warrants check. But they did a warrants check, one of the officers did, because they wanted to make it look like a routine traffic stop. It doesn't matter whether it's pretextual. It used to matter in some circuits, and then the Supreme Court in Wren said it doesn't matter. It doesn't matter if it's pretextual, but it does matter in that the stop, the duration has to be tailored to the length of time needed for the stop. I don't see where the limitation is in the case law. You've mentioned a case that I mentioned, but you didn't point me to language in it or a page number, and I didn't read it that way. So you have to help me. Let's talk about Mueller v. Mina. I've got it right here. Okay. I don't have it right in front of me. Oh, it's too bad. Maybe in my rebuttal I can find the language and quote it for you. But I think that the language ---- I read it as meaning the opposite of what you say, and it seemed to me that since there's no way in the world they could send him on his way after he'd run a red light, driven 85 miles an hour, and gone from the far left to the far right and exited in less than three minutes, it really didn't matter what they were doing or why they were doing it. But in this case, a traffic stop, all they had to do was go to him at the car, say, we're stopping you for these traffic violations. We're going to write you a ticket. They look around, see if there's any drugs in the car. You must be a much more restrained driver than I am. I've never gotten a ticket as fast as three minutes. I don't think I've ever ---- You must have never gotten a ticket. I have gotten tickets, yes, I have. And I will say that they typically, I think typically last at least three minutes. But in this case, I don't think, you know, I don't think the principle should be what the standard traffic stop should, the duration should last. It should be what was needed for the traffic stop in this case. And in this case ---- I thought the language of Mueller v. Mina and Chavez is was the stop prolonged beyond what was needed for a traffic stop.  And my argument is it was prolonged beyond what was needed for the traffic stop because they waited approximately two minutes for the other officer to arrive. And then the other officer says, we're going to wait here until a dog arrives. At that point when he asked the question, the duration of the stop for the traffic purpose was ended. There was no need to continue to hold him at that point on. You mean you can drive that way and they'll say, no, forget it. Go ahead and enjoy yourself. We didn't find any drugs. Well, at that point it was they should have had reasonable suspicion of probable cause to detain him or to ask him further, just like in Valenzuela-Chavez. In that case, Chavez-Valenzuela was a seven-minute stop. Then they asked the question. Here it was probably two and a half to three minutes, and then they asked the question. Let me give you a hypothetical. Let's say traffic cops stopped him. He doesn't care. Dope, that's not his department. He calls the dope people. They can bring their dog. Meanwhile, he's going to give the guy a ticket, and it's a you-must-appear-in-court ticket because the driving was so egregious. It takes about 20 minutes. During the 20 minutes, the dog comes, sniffs the car, there's dope, and they follow up from that, and they also find the dope. Instead of being before the traffic ticket, it's during the traffic ticket procedure, but the traffic ticket procedure takes 20 minutes. Is that constitutionally okay? I think if the traffic stop procedure took that length of time legitimately, that's okay. In this case, it didn't. They didn't need to call in for warrants because they knew in advance they had checked. They had a whole briefing with all the agents. They knew he had his criminal record. It's a different situation. I'd like to switch to the third-party culpability issue, at least briefly. In this case, the evidence was that the defense wanted to proffer was that someone else who was there at the house who had access to the drugs that were found in the storage locker and in Mr. Hayes' car could have been the responsible person. The proffered evidence that was excluded was evidence that this other person, his nephew, was convicted of selling cocaine in Nevada less than a year before. The judge excluded the evidence under Rule 403. The government cites a number of cases in its brief that are primarily based on the due process standards rather than Rule 403. Under Rule 403, this Court's cases are clear that the defense has a right to bring in evidence to create any kind of reasonable doubt, even if it's somewhat speculative, as long as it's relevant. And Armstrong, Vallejo, and Crosby all say their fundamental standards of relevancy require the admission of testimony that tends to prove another person did it. In this case, it would have been very powerful evidence that John Robinson, Jr., his nephew, who was there at the house, may have been the person responsible for the crack cocaine. I'd like to reserve my remaining minute for rebuttal. Thank you, counsel. Good afternoon, Your Honors. My name is Ann Pings. I'm an assistant United States attorney here today on behalf of the United States. If the Court would like to hear about the third-party liability, I would just point out that unlike the cases cited by the defendant regarding such as Vallejo and Rule 403, those cases actually had some connection, that the person had actually been in the same car, been in a position to commit the offense. In this case, there's no evidence that, other than that this nephew was around the house every once in a while, that he was ever in the storage locker, that he was ever in the car, anything like that. The connection is very attenuated. Moreover, under the rules of evidence, for example --" I mean, specifically Rule 404a, conformity evidence is not allowed. What they were seeking to do is say this nephew had cocaine on another occasion a year earlier. It was powder, not crack, another state, blah, blah, blah. But yet, you know, that makes it likely that on September 18, 2002, in conformity with that behavior, he put some crack in the garage or in the car. And that's not permissible. It's also, in this case, unfairly prejudicial, specifically the other half of Rule 403, because in this case, it would have created a very false and misleading impression, since the defendant himself --" Kennedy, you need to go as far as it's being inadmissible. I thought we were just reviewing the district court's discretion that the confusion outweighed the pressure, the probative value. That's fine. We don't need to go beyond that, but you don't. I don't believe I do. The probative value is very, very small because of the fact that there was no specific connection to the storage locker or the car of this defendant. So the probative value, he was one of, I don't even remember how many relatives that had access to this house, and the fact that he was convicted was added, I think, as the judge said, very little to the equation, because the idea is somebody else could have put it there. So --" Kennedy, I'd be interested in how you distinguish this case from Chavez-Villanueva, other than the fact that one is 7 minutes and this is 2 to 3 minutes. This case is, was, and always was a pretext stop. So it was a pretext from the beginning. We have never pretended it's not a pretext. It's completely a pretext. There, given that, the fact that the government or the agents are allowed to commit to conduct, excuse me, pretext stops, means that they, the whole thing is a pretense. They are allowed to make a pretense of going through the usual steps. They are allowed to make a pretense of going through the usual steps. So they get, they get how much free time? Well, under the Mena ---- They get a, they get 10 minutes, 5 minutes, 20 minutes? Well, the Mena v. Mueller case does say prolonged beyond the time reasonably required to complete that mission. And there could be an opening here, I guess I would see it, to say, like, oh, a traffic stop can last no longer than a specific time, say 10 minutes, or to narrow it to the mission in this case. I think the Court doesn't really need to reach that because the evidence here is that the whole time this is going on, Officer Francois is on the radio. So regardless of some objective, you know, 3 minutes, 4 minutes time frame, the officer is still on the radio, not just checking the things that the agents already knew, which I would submit he's totally entitled to do because it is, again, a pretext. He's entitled to check again, take all the normal steps he would take with a traffic stop. What are those normal steps? They're outlined in our brief, but check for check his driver's license, verify for warrants. I think you can check the VIN number for a stolen car. The officer, Francois, in this instance, was also informing the dispatcher where the officers were so that the department would know where its people were, and also informing the officers that they actually had a suspect detained so that they knew where they were. He was verifying the driver's license and checking for warrants. Roberts, could you clarify one thing as you answer this question? Could you clarify one thing for me as part of your answer, and that is, whether the district court discredited Francois's testimony? I thought he credited Wysinski's testimony. He credited Officer Wysinski's testimony on the very narrow issue of whether or not Special Agent Earing walked up and said something about a dog. And there was never any specific discussion of options. I thought Wysinski testified that they were just standing around. After they made the stop, they were just standing around next to the cars doing nothing. And I thought that's what the district court credited his version of what the two officers were doing. I don't read the record that way at all. I think he – I think the only thing he specifically made a finding on, the motions below were very vague and voluminous, and the judge made a catch-all finding on other issues. I will admit it's not the most precise record of findings. In his oral statement. He did give an oral statement. His oral statement was that he credited Officer Wysinski as opposed to Special Agent Earing regarding the statement about the dog, and that was the narrow issue, I believe. There was not a discussion of the – one of our issues is – one of the – we raised in our brief is that they did not raise this below. They did not raise the issue of prolonged beyond the length. They raised lots of issues about the traffic stop or antiviolations. And they framed this issue as asking questions you're not allowed to ask. As they – But I thought they specifically raised the timing issue in their – in their motion – in their supplemental brief after the evidentiary hearing. I'm sorry, Your Honor. I must admit I don't recall that. That's entirely possible. The – but there is no particular finding on that issue one way or the other. But the judge did – I grant you the judge did not say anything about the time. Right. Either in his oral ruling or in his written order. The one thing he did say orally is that it was a pretty short traffic stop, which He'd gotten tickets, too. Yeah. So the – well, I don't know anything about that. Did this fellow ever get his ticket for running a red light and all that? Did who? Did Hayes ever get his traffic ticket? Not on that occasion, no. He did on the prior traffic stop of July. I interrupted your – your answer to Judge Hugg's question about how this case differs from Chavez-Valenzuela. But I was concerned also about your – your version of the facts was pretty much going along with what Francois said. So I was just a little bit concerned about facts. Well, I think there's – But, you know, it would be helpful if you would try and, you know, point out all the Chavez-Valenzuela. You know, I'm sorry. I'm a little bit – I'm not – I'm not totally up on those facts, I will admit. We're resting primarily on our fact – our argument that this is a pretext and that with a pretext, you – you get to do all the regular things that you would do normally during a traffic stop. Whether there are – You have your marked-up copy of Chavez-Valenzuela right on the podium there, would you? Just tell us the distinctions. I think one of the issues, as I recall, in this case, is that the issue there was the extending of the stop. In this case, there is no evidence that the stop was extended beyond, as the Court pointed out. In that case, they asked him, do you have any drugs in the car? And I think the question is – That was after they had issued him the ticket. Right. And that's the primary difference here, because there was no ticket issued. The traffic stop and its regular steps were still going forward. So after – let me ask you this. So after they stopped the defendant here, it's your – it's the government's position that even though this was a – this was a pretext stop, they knew everything – they had a full briefing on Hayes that morning or the day before. They were fully briefed, the Sacramento Police Department and the DEA officers, who had been briefed about Hayes' background. So they knew everything. They had done a warrant check. They knew his car. They knew what cars he owned. They knew where he lived. They knew everything about the guy. So it's the government's position that as a pretext stop, even though they knew all this information, they're – they could just basically stop him and hold him for about five or six minutes, ten minutes, how long? Well, it's our view that – That would be – that's in furtherance of the stop, I gather, is what the argument is. Well, as I said before, our position is – or I think the cases are – say that you can go through the normal steps that would normally be required to do a normal traffic stop for multiple violations of the types that are in this record. And the other example that was given to other counsel, if you were to bring a dog during that timeframe, that's fair – my understanding of case law is that's fair game as well. Here, in the intervening event, was they asked a question. But as long as it's within the timeframe, the steps of the normal traffic stop are still being conducted, there's nothing to dispute that the – the stop is still going on, and – and intervening in an event is permissible. I don't know that the Court needs to do that. So what if they – you know, what if they really didn't do anything, other than wait for the – for the DE agent to walk over? They knew the DE agent was nearby. They stopped the car, and they just wait for the DE agent to arrive. Is that okay? Well, the – the evidence in the record that was in mostly through the declarations because the Court wouldn't permit us to present oral testimony is that the DE agents were laying in wait, and the plan was not that they would get out of the car, but that when Officer Wysinski was – Well, they knew he – the police officers knew that the DE agents were nearby. Correct. They knew that. Yes, they knew that. But it's our position that's okay. That's why they do these stops, is because they want to identify people, get their names, get their addresses, learn things. The prior traffic stop, they did a traffic stop. They saw all those hundreds of empty Ziploc bags used for packaging of narcotics in the car. Even assuming that it's pretextual, and we already know from what the Supreme Court said in Wren that that's okay, why don't they just go ahead and give him a ticket while the DE agents are driving over and running the dog around the car? Well, the evidence in the record is that they were – they hadn't had time to do that because it was so short. He was still on the radio running the – doing the first steps of a routine traffic stop. I thought there was other evidence. One policeman says that. The other one says we're standing around doing nothing, waiting for the DEA. And I'm thinking, why don't they just give him a ticket? No reason. This guy should skate for going 85 and lane change and running a red light when other people get tickets for him. Why – and  He is doing 121 months. I don't know. I think at some point the proportionality is off. They can do another few days after that. They would have written a ticket if there hadn't been the intervening event, just like they did on July 31st. They did the traffic stop. They made an observation. Nothing more came of it. They gave him a ticket for the carpool lane. The reason not to bother with the ticket is they think they've got something that will give them so much more time that it isn't worth the paperwork. Well, there's nothing in the record, but I'm sure that's the case, yes. Can there be any other explanation? Can there be? I assume there is, but is Your Honor suggesting that traffic collisions didn't occur? It seemed like they had him cold on running a red light and those other things. Is there – is there any doubt? No. No. In the record, there was declarations from numerous agents trying to say Well, if they had done that, then there's no question that they'd be okay under Chavez, Valenzuela, and Mueller v. Reno. Is that right? Yeah. That's our position. The agents' declarations talk that they couldn't even keep up with him. All – I mean, that's all in the record. There's no doubt about that, you know. And we're not pretending that the DEA is the traffic police. They – this is – they are permitted under the law to do these pre-text stops. And they – if they weren't allowed to check and go through the motions of things they already knew, then the exception would swallow the rule. There would be no purpose of having a pre-text stop if you pretend – stop him, pretend it's about traffic, and then without being allowed to write, you know, to do your normal steps. Thank you, counsel. I have one question. You – you mentioned limiting what the court said about Officer Wyszynski's – and I don't see it that way. The court finds the testimony of Officer Wyszynski's credible, and the testimony of DEA special agent Neering less persuasive. It didn't say anything about a dog. It just said that – credited the testimony of Wyszynski. But the – now, this issue was not what everybody was talking about at the hearing. I don't know how to say it. Well, but I'm just – I'm concerned with your statement that it was limited, whereas it looks to me like it was a credibility finding generally. Except that the context was the whole hearing was about everything else had been on the declarations, and the whole hearing was about the statement about the dog. And there's no finding against Officer Francois, for example. There's Officer Neering and – and Special Agent Neering and Officer Wyszynski had two very different things to say about this dog statement. And that's what everybody was talking about. There was – nobody was talking about how long it was prolonged beyond the normal steps. I'm just concerned. I understand what you're saying. But to broadly state that it – that he narrowed it to that when, in actuality, he found Wyszynski credible and Neering less so. I agree with the Court, but I would say it was limited to the context that the Court was addressing that day. I know. I know what your position is. It just doesn't seem to me that that's what the order of the Court says. All right. If there's nothing else, we'll submit on the briefs. Thank you, Your Honor. Thank you, Counsel. Just briefly, Your Honor, first of all, both officers, Wyszynski and Francois, stated that there was no need to run a warrant in this case, and they were just doing it just – just to make it look like a traffic stop. That's an excerpt of Record 113, 114, 139 to 140. Well, if it's a pretext, why can't they just do that? Well, because if you look at, for example, Chavez Valenzuela, language quoted from that states that – and they're quoting Florida v. Royer – that the scope of an investigated detention must be carefully tailored to its underlying justification. It may last no longer than is necessary to effectuate the purpose of the stop. In this case, it wasn't necessary to effectuate the purpose of the stop. They didn't have to call in for warrants already. They already knew I didn't have warrants. Let me ask you, you know, one of the things I think Francois testified to was that he was calling in to give his location. Yes. Let's just suppose that that's what happened, and it took two minutes. I think that would take 10 seconds. What's wrong with that? I don't think that would take 10 seconds, except I think that would take 10 seconds. Well, you don't know. Maybe the line's busy. Maybe the phone's not working or something. You know, it takes him two minutes to make the call. I think you just call in the radio, you report it in. What would take the two minutes is waiting for the warrants check. That would probably take longer than that. No, I'm just – let's say there's a problem with his machine, a problem with it, and he just, you know, takes him two minutes to place a call to give him his position. If that's what the record is, and if they were legitimately doing the steps needed for the traffic stop, then I don't think there would be a consequence. So he hasn't gotten out of his car. He's just stopped the car, and he tries to make a call and said, here's where I'm located, but he hasn't – he's having some difficulties. If that was – if that's the record, I don't think that's a problem. But I don't – that's not the way the record is read here. The way the record is, he calls in, he's calling for warrants, waiting them to check. Then the prosecutor asks him, you also called in to report where you were. He says yes. But the main purpose of it was to go through asking for a warrants check to make it look like a routine traffic stop. And it's – and I know that pretextual stops are permitted, but this takes it way above and beyond what the Supreme Court has allowed and makes – makes it unreasonable under the Fourth Amendment. Roberts. I'm trying to find what you just cited from Chavez. It's on page – it's page – I'm looking at 726 for the meat there. Now, my copy doesn't – my copy has the Lexis pinpoint sites. It's at page 10. I'm sorry, I don't have any – That doesn't do me any good. It's under – it's in the first paragraph under Section B, Propriety of the Prolonged Detention, and it's in the second sentence, starting with the constitutionality. The constitutionality of an investigative detention is judged under the framework established in Terry v. Ohio, requiring that the scope of an investigative detention must be carefully tailored to its underlying justification and may last no longer than is necessary to effectuate the purpose of the sentence. I see where you are now. Thank you. And just finally, under the third-party culpability, I think that the Court has previously found in Armstrong, Vallejo, and Crosby that it was an abuse of discretion if the evidence is relevant and would tend to show that another person is guilty of a crime. And I ask that, for all those reasons, that the Court reverse the convictions for Manfred. Thank you, counsel. The United States v. Hayes is submitted.
judges: Hug, Kleinfeld, Paez